**TOM YU (CA Bar 306699)**
155 North Riverview Drive, Suite 305
Anaheim Hills, CA 92808
Office: (844) 998-1033
tyu@tomyulaw.com

**EDWARD M. ROBINSON (CA Bar 126244)**
**BRIAN A. ROBINSON (CA Bar 333650)**
21515 Hawthorne Blvd, Suite 730
Torrance, CA 90503
Office: (310) 316-9333
Facsimile: (310) 316-6442
eroblaw@gmail.com

Attorneys for Defendant
*TREVOR JAMES KIRK*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> TREVOR JAMES KIRK, <br><br> Defendant. | Case No. 24-cr-00527-SVW <br><br> **DEFENDANT TREVOR KIRK'S NOTICE OF MOTION AND MOTION FOR JUDGMENT OF ACQUITTAL PER FRCP RULE 29(c)** |

PLEASE TAKE NOTICE that on April 21, 2025, at 11:00 a.m., or at a date convenient to the Court and parties, Defendant Trevor James Kirk ("Mr. Kirk"),

1 through his attorney of record, hereby moves this Honorable Court for an order setting
2 aside the guilty verdict in this case and enter a judgment of acquittal.
3    This motion is based upon the attached memorandum of points and authorities,
4 all files and records and transcripts in this case, and any further evidence as may be
5 adduced at the hearing on this motion.

6                             Respectfully submitted,

8 DATED: February 20, 2025       By  /s/ Brian A. Robinson
                                     Tom Yu
9                                    Edward M. Robinson
                                     Brian A. Robinson
10                                   Attorneys for Defendant
                                     *Trevor James Kirk*

# INTRODUCTION

Trevor Kirk ("Deputy Kirk") was tried on one count of Deprivation of Rights Under Color of Law in violation of 18 U.S.C. § 242. After a 3-day jury trial, Deputy Kirk was found guilty. Deputy Kirk now moves this Court to set aside his conviction under Rule 29(c) of the Federal Rules of Criminal Procedure and requests the entry of a judgment of acquittal for failure of the government to prove each element of the offense beyond a reasonable doubt.

The government's theory at trial was clear, Deputy Kirk violated J.H.'s right to be free from excessive force the moment he attempted to detain her. Deputy Kirk, the government argued, was mad at J.H. because she was filming him, so he acted in retaliation. The government's argument was that Deputy Kirk also made no effort to de-escalate his encounter with J.H.. The resistant—and even assaultive—behavior by J.H., as the government argued, was "justified resistance" as Deputy Kirk had no right to make contact with J.H.. Deputy Kirk's retaliatory motive, per the government's theory, caused the encounter with J.H. to be a willful use of excessive force.

The evidence at trial belied the government's theory. As set forth herein, the government's theory ignored the undisputed evidence that Deputy Kirk was under no policy obligation to "de-escalate" prior to his lawful detention of J.H. who, as Deputy Kirk knew at the time, was a suspect in a robbery in progress who had been fighting with store security. The evidence at this trial established that Deputy Kirk was obligated to detain J.H. and that he did so according to his training. Upon J.H.'s

1

resistance to this lawful detention, Deputy Kirk's use of the takedown and O.C. spray was entirely consistent with his training and not excessive. The undisputed fact that Deputy Kirk had an obligation to detain J.H. and that upon her immediate resistance was allowed to use the force per his training makes it such that no rational juror could have found the elements beyond a reasonable doubt.

## ARGUMENT

### I. A JUDGMENT OF ACQUITTAL IS PROPER HERE BECAUSE THERE WAS INSUFFICIENT EVIDENCE TO ESTABLISH THE ELEMENTS OF THE OFFENSE.

Rule 29(c) of the Federal Rules of Criminal Procedure provides that a judgment of acquittal must be entered when the evidence is insufficient to sustain a conviction on the offense or offenses charged. Fed. R. Crim. P., Rule 29; *United States v. Moler*, 460 F.2d 1273, 1274 (9th Cir. 1972). The Court evaluates the evidence in a light most favorable to the government to determine whether any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *United States v. Brandon*, 633 F.2d 773 (9th Cir. 1980).

In this case, the government failed to prove beyond a reasonable doubt that Deputy Kirk used excessive force during his detention of J.H. Furthermore, the government also failed to prove beyond a reasonable doubt that Deputy Kirk acted willfully.

2

### a. The Government Failed to Prove Beyond a Reasonable Doubt that Deputy Kirk Used Excessive Force.

The jury was instructed that the second element of 18 U.S.C. § 242 required the government to prove beyond a reasonable doubt that "[Deputy Kirk]…deprived J.H. of a right which is secured or protected by the Constitution or laws of the United States— in this case, J.H.'s right to be free from the use of unreasonable or excessive force[.]" (Doc. 53, p. 10). This Court instructed the jury on multiple factors to be considered when determining excessive force. While not exclusive, these factors included "the severity of the crime, if any; the extent, if any, to which [J.H.] posed a threat to the safety of [Deputy Kirk] or to any other person; the extent, if any, to which [J.H.] was physically resisting arrest or attempting to flee at the time force was used; the extent of the injury suffered, if any, by [J.H.]; and the effort made, if any, by [Deputy Kirk] to temper or limit the amount of force." (*Id*.)

The evidence is uncontroverted that J.H. was an identified suspect in an in progress felony robbery call for service. The Sheriff's dispatch also informed Deputy Kirk that the suspects had been fighting with store security. Armed with this information, per his training, Deputy Kirk attempted to legally detain J.H. While Deputy Kirk approached J.H., she was recording his and his partner deputies' detention of the other identified robbery suspect. As Deputy Kirk, as he had been trained, attempted to secure J.H.'s hands as part of her legal detention, J.H. insisted that Deputy Kirk could not touch her. The evidence at trial was undisputed that Deputy Kirk had a

3

right and an obligation to detain J.H. and that her proclamation was a form of resistance and legally indefensible. As testified by the government's witness, Deputy Jose Diaz, the Sherriff's Department trainer in tactical communications, it is not escalating force to detain a suspect. (RT, 2-4-25, pg. 126).

While attempting to legally detain J.H., J.H. swung her arm and hit Deputy Kirk, thereby escalating the situation. In light of J.H.'s immediate resistance and assaultive behavior, Deputy Kirk grabbed J.H.'s arm to ensure she would not attempt to hit him again. J.H. continued to actively resist Deputy Kirk's attempts to gain control. Despite being told to "stop" a number of times, J.H. continued to actively resist and, as trained, Deputy Kirk performed a takedown to overcome J.H.'s resistance. While on the ground, J.H. continued to actively resist by attempting to get up and ignoring Deputy Kirk's vocal commands. Deputy Kirk, in an attempt to gain J.H.'s compliance and in accordance with his training, performed a "ruse" by threatening to punch J.H. if she continued to resist. Despite J.H.'s failure to heed Deputy Kirk's ruse, Deputy Kirk did not punch J.H. and resorted to a lesser form of force, per his training, O.C. spray. Deputy Kirk attempted to use OC spray on J.H. to overcome her resistance but missed her eyes so he deployed his OC spray again. Deputy Kirk finally successfully detained J.H., and per his training, immediately radioed for an ambulance for J.H.

Deputy Kirk placed J.H. in the back of his patrol vehicle. This series of events, played out for the jury ad nauseum through the introduction of multiple videos, does not prove beyond a reasonable doubt that Deputy Kirk used excessive force. Rather, it

proves that Deputy Kirk used the minimal amount of force necessary to execute his duties as a law enforcement officer, as he was trained, and detain a resistant robbery suspect.

Belying the government's theory, the government's own expert, Rodger Clark, made clear under cross-examination, "[i]f it is that [a suspect] refuse[es] to consent to the detention, which is different than arrest, then force can be used—then force could be used to keep them in place, pending the investigation." (RT, 02-05-25, pg. 168). This is precisely what occurred in this case.

As stated above, the government's theory throughout trial was that Deputy Kirk used excessive force against J.H. the moment he laid hands on her because he did so in retaliation to her filming. Its theory was undergirded by testimony that de-escalation is a preferred method of investigation. This combined theory by the government conveniently ignored the fact that Deputy Kirk had an undisputed legal right and obligation to detain J.H.—*an identified felony robbery suspect who had been identified as fighting with store security*. Once this fact was made clear, the government's argument fell apart.

The government's primary argument, again, is that Deputy Kirk retaliated against Ms. Houseton for filming him. The government's argument to the jury, based almost entirely on this retaliation theory, refused to acknowledge that Deputy Kirk, at the time he placed his hands on J.H., had a legal right and obligation to physically detain her. The government's witnesses made this clear. As Sergeant Ismael Opina, the

5

1 governments use of force witness, testified on cross-examination, deputies are not
2 trained to wait for a robbery suspect to finish recording before detaining that suspect.
3 (RT, 2-5-25, pg. 62). The Sheriff's Department policy on retaliatory force used on
4 someone videotaping deputies only concerns innocent bystanders, it does not apply to a
5 robbery suspect that is being detained. (*Id*. at 63).

6       J.H.'s active resistance allowed Deputy Kirk to use force to effectuate that
7 detention. Viewing the evidence as the law requires, not with the benefit of 20/20
8 hindsight but in deference to the realities of law enforcement, no rational juror could
9 have found beyond a reasonable doubt that Deputy Kirk acted with excessive force.

10       **b. <u>The Government Failed to Prove Beyond a Reasonable Doubt that</u>**
11           **<u>Deputy Kirk Acted Willfully.</u>**

12       The fourth element of 18 U.S.C. § 242 required the government to prove beyond
13 a reasonable doubt that "[Deputy Kirk] acted willfully to deprive [J.H.] of such a right."
14 (Doc. 53, p. 10). The government had to prove beyond a reasonable doubt that Deputy
15 Kirk acted "voluntarily and intentionally, with a specific intent…to use more force than
16 necessary under the circumstances." (*Id*. at p. 11).

17       The government's argument to the jury with respect to willfulness suffers from
18 the same infirmity as its argument concerning excessive force. As with excessive force,
19 the government's theory is hitched almost entirely to the proposition that Deputy Kirk's
20 physical contact with J.H. was motivated by his anger towards her and his desire to
21 retaliate because she was filming and "did not listen."

6

      The government's witnesses testified unequivocally that pre-detention commands were not required per policy and that, again, Deputy Kirk had a legal right and obligation to detain Ms. Houseton to investigate the 'ongoing robbery' of suspects who were fighting with store security. Albeit argued with passion, the government's approach to the willfulness element is undermined by their own witnesses' testimony. In short, the evidence at trial established that Deputy Kirk was acting as he had been trained. No amount of second guessing can change that and no rational juror with these facts and this law could have found Deputy Kirk acted willfully beyond a reasonable doubt.

      Deputy Jose Diaz was called as a witness for the government to testify to the training Deputy Kirk received regarding "strategic communications." Deputy Diaz testified that, while preferable, deputies are not required to engage in verbal communications with a suspect as opposed to going hands on to detain. When asked if deputies are instructed on using "communications as opposed to going hands on…", Deputy Diaz testified; "Not necessarily as opposed. Again, there is a constant assessment and reassessment when they are in any situation or incident, and they have to make that judgment call on their own to say, if they chose to use force, then have to explain why." (RT, 2-4-25, pg. 100). Additionally, Deputy Diaz testified that "if I have information that [someone] may have been involved in a crime, then I would want to detain them and start asking questions about if there was an involvement with them or not." (*Id*. at 101-102). Deputy Diaz further testified that simply because someone does

7

not want to be detained does not mean deputies have to stop what they are doing. Under Sheriff's Department policy, deputies have a duty to apprehend criminals and they cannot just let them walk away. (*Id*. at 124).

On cross-examination, Deputy Diaz testified regarding the way deputies are trained to respond to robbery calls specifically. In testimony that properly contextualized the preference for, but not the need to de-escalate to conform to policy, Deputy Diaz testified that, on a robbery call, deputies are trained to secure suspects, to handcuff them and pat them down for weapons. Exigency is not required to secure the scene; it is for officer safety. (*Id*. at 126). Critically, Deputy Diaz testified, detaining a suspect is not the same as escalating force. (*Id*.) Before engaging in any investigation, deputies are trained they have to detain the suspect first. (*Id*. at 127).

Sergeant Opina was called as a witness for the government to testify to the training Deputy Kirk received regarding "use of force." On direct examination, Sergeant Opina testified that deputies are trained "that they do not have a duty to retreat." (RT, 2-5-25, pg. 14). "They're also taught that they can use objective and reasonable force." (*Id*.) Specifically, "deputies are trained that, when a suspect is resisting, they are allowed to use objectively reasonable force to control, restrain, or overcome that resistance to effect an arrest, prevent an escape, or overcome resistance." (*Id*. at 23). Regarding takedowns, Sergeant Opina made it clear that "takedowns are dynamic in nature," and deputies "can't always train for where [a] person lands. The

8

goal of a takedown is to get the person to the ground to gain safe control and be able to control them." (*Id*. at 29.)

On cross-examination, Sergeant Opina testified that if a suspect makes "a swapping" motion, as Ms. Houseton did in this case, that is "a factor to consider on a threat level." (*Id*. at 57.)

Throughout their testimony, Deputy Diaz and Sergeant Opina made it clear that there is no exact play book deputies are instructed to follow. As Deputy Diaz testified, "I can't give a playbook to deputies to say, when this happens, you should do this. We have to have them be able to make their own decisions and then explain why they made those decision." (RT, 2-4-25, pgs. 100-101).

The government's witnesses, Rodger Clark, Deputy Diaz, and Sergeant Opina, make it undeniably clear that Deputy Kirk was trained that, for officer safety, a robbery suspect must be detained prior to an investigation. This unimpeached evidence undermines the impact of the government's retaliation and de-escalation theory. With this evidence, no rational juror could conclude that the government had proven Deputy Kirk acted willfully beyond a reasonable doubt.

9

**CONCLUSION**

For the foregoing reasons, Deputy. Kirk respectfully requests that the Court set aside his conviction and enter a judgment of acquittal pursuant to Rule 29(c) of the Federal Rules of Criminal Procedure.

Respectfully submitted,

DATED: February 20, 2025     By  /s/ Brian A. Robinson
                                 _____
                                 Tom Yu
                                 Edward M. Robinson
                                 Brian A. Robinson
                                 Attorneys for Defendant
                                 *Trevor James Kirk*