Caree Harper SBN 219048
LAW OFFICES OF CAREE HARPER
401 Wilshire Blvd. Suite 1200
Santa Monica, CA 90401
Tel. (213) 386-5078
Email: *ch1@attorneyharper.com*

Attorneys for Victim "J.H."

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| UNITED STATES OF AMERICA, | CASE NO.: 2:24-00527-SVW |
|---|---|
| Plaintiffs, | **CRIME VICTIM'S STATEMENT PER 18 U.S.C. § 3771** |
| vs. | |
| | DATE: 5/19/25 |
| | TIME: 11:00 A.M. |
| TREVOR JAMES KIRK | PLACE: 350 W. 1st St Ctrm. 10-A |
| | Los Angeles, CA 90012 |
| Defendants. | |

**CRIME VICTIM, J.H.'s ASSERTION OF RIGHTS UNDER 18 USC, § 3771 TO BE HEARD ON THE POST-VERDICT PLEA, REQUEST TO STRIKE JURY VERDICT, & SENTENCING OF THE DEFENDANT**

Comes now crime victim, J.H., by and through her attorney, Caree Harper, who asserts her rights under 18 U.S. Code § 3771(a) to this Court under 18 U.S. Code § 3771(d)(3) as follows:

///

## Background

Defendant Trevor Kirk was convicted by a jury of his peers of felony deprivation of rights under color of law resulting in bodily injury under 18 U.S. Code § 242. The Government and the Defendant (hereinafter the "Parties) have proposed that this Court accept a "post-trial" plea agreement which would find there was **no injury to J.H.**[1] The Government just provided cases that purportedly support the Plea Agreement late on May 15, 2025, (two days *after* they were ordered by this honorable court to provide the information). The second bite at a Plea Agreement is seemingly without authority or ***good cause*** for a former Sheriff's deputy with a pattern of violence against women[2].

## Statement of Facts per Indictment & U.S. Attorney's Press Release on 9/5/24:

> According to the indictment, Kirk and another deputy were responding to a possible robbery at the WinCo by a male and female suspect. Kirk and the other deputy arrived on scene and handcuffed and detained a man matching the description of the male suspect, while a female, JH, who match the description of the female suspect, videotaped the deputies. While the video tape while videotaping, JH told Kirk that he had a legal obligation to inform DB of the basis for the detention and that she was broadcasting his actions on social media.

---

[1] JH's emergency room Diagnoses *was:*
1) Blunt head injury
2) Scalp contusion
3) Contusion of right forearm
4) Contusion of right wrist
5) Chemical conjunctivitis
6) Contact dermatitis
7) Closed fracture of scaphoid of right wrist. Splint application to thumb spica **(SEE EXH "A");**
And JH ***still suffers*** from: Nightmares, difficulty focusing, flashbacks of the incident, decreased memory. No trust in any & all law enforcement officers, extreme fear, & intense distress. JH plans to make an in court statement on May 19, 2025.
[2] See Domestic Violence arrest discussed below.

**J.H.'s STATEMENT PER 18 USC § 3771**

|   |   |
|---|---|
| 1 | The indictment alleges that Kirk then approached JH without giving any |
| 2 | commands, attempted to grab her phone. JH turned away, at which point |
| 3 | Kirk, allegedly grabbed JH by her arm, hooked his left hand behind her |
| 4 | neck, and violently threw her to the ground. While on the ground, Kirk |
| 5 | yelled at JH to "get on the ground", and she told him that "it's already on |
| 6 | YouTube Life." Implying that are very video of Kirk and the other deputy |
| 7 | handcuffing DB had already been made public. Kirk then placed his knee on |
| 8 | JH's shoulder and when JH yelled for Kurt to "stop" and called him an |
| 9 | expletive, Kirk cocked his right arm back with a clenched fist and said "Stop |
| 10 | or you're gonna get punched in the face." Kirk then allegedly pressed his |
| 11 | knee into JH his neck and said "get your neck [sic] off my …off my… I |
| 12 | can't breathe". While on top of JH, the indictment alleges that Kurt used his |
| 13 | LASD radio to misleadingly report that he was in a "fight". |
| 14 | The indictment further alleges that shortly thereafter, without giving any |
| 15 | additional commands to JH, Kirk sprayed her twice in the face with pepper |
| 16 | spray.  JH received medical attention for the pepper spray used on her and |
| 17 | the injuries she received from being thrown to the ground. The indictment |
| 18 | also alleges that Kirk then drafted and submitted a misleading report to |
| 19 | LASD in which he portrayed JH as a threat to his physical safety, claiming |
| 20 | that JH assaulted him, attempted to kick him, hit him, and took a "fighting" |
| 21 | or "bladed" stance. |
| 22 | For the first time, in the **new Plea Agreement** at pages 8-9, it is being |
| 23 | alleged by the government that JH "**swatted**" at Kirk and **"resisted"**.   These new |
| 24 | purported actions of JH was not proven in the criminal trial or testified to in the |
| 25 | civil litigation. The defendant took the Fifth and did not testify in either |
| 26 | proceedings; the other deputy on scene testified hit did not see it and it is not |
| 27 | supported in the body worn camera from either deputies or the bystander who |
| 28 | videotaped the incident.  The government fails to cite a reference to their new |

1 allegations against the crime victim. Further, the Plea Agreement omits the words:
2 "excessive force" choosing to dilute what occurred by saying: "unnecessary force"
3 instead.

4     J.H. is a senior citizen. She committed no crime. She had no weapon. She
5 did not try to flee. She did not try to resist. J.H. sustained a black eye, a fractured
6 bone in her right arm, multiple bruises, scratches, and significant chemical burning
7 from the pepper-spray. J.H. screamed in pain and struggled to fill her lungs with
8 oxygen. The Defendant tried to cover up his actions by initiating bogus charges
9 against J.H. for felony obstructing an officer under Cal. Penal Code § 69.

10     That false arrest charge against J.H. by Defendant Kirk was rejected by the
11 Los Angeles County District Attorney's Office and no charges were filed.
12 However, J.H. not only had to deal with her physical injuries, retain defense
13 counsel, but to this day, she suffers from PTSD from both the mental trauma of
14 both her injuries and the false arrest brought against her by defendant Kirk who has
15 yet to apologize. Her fingerprints were rolled and she will forever have that arrest
16 on file with the Department of Justice (DOJ) database.

17     Use of force expert Roger Clark testified at the criminal trial and was "JH's"
18 retained expert in the civil litigation against Kirk, Sheriff Luna and others (the
19 Expert's R26 report is attached herein). Mr. Clark offered several opinions, one in
20 particular stated:

> *From my review of the materials provided, **<u>the use of force and restraint inflicted on Ms. Houseton by Deputy Kirk was excessive and unreasonable</u>** and in violation of LASD policies, including but not limited to Deputy Kirk's use of a leg sweep, throwing Ms. Houseton to the ground head first and using pepper spray against Ms. Houseton as he (Deputy Kirk) placed his body weight and knee on Ms. Houseton's neck. Across the nation, for decades, law enforcement agencies have been training their personnel in proper tactical responses, use of force options, restraint techniques, and medical assessment and care for individuals taken into custody. The aim of this training is to prevent injuries and/or fatalities, such as the*

J.H.'s STATEMENT PER 18 USC § 3771

*ones that occurred in this case. These methods are well-known and proven effective for the safety and welfare of both officers and the public. In this instance, Deputy Kirk utterly failed to follow these standards and his training in this incident. Had he done so, Ms. Houseton would not have sustained contusions, lacerations and breaks to her arm, body and face.*

Additionally, California law makes clear, J.H.'s conduct does not constitute, in and of itself a crime and there was no reason for the Defendant to use force on her.

## ARGUMENT.

**I.   There is limited authority to strike a jury finding but there is no justification or a single shred of <u>*good cause*</u> to do so for Kirk**

Even in the government's supplemental new cases filed May 15, 2025, there are no supporting cases that offer a sweetheart deal for <u>**NO GOOD CAUSE**</u>. In fact the Parties offer no cause and no reason whatsoever for the post-verdict deal.

The new U.S. Attorney and Defendant Kirk believe that there is authority to ignore the rule based upon their agreement. At this point in the proceeding, there is limited authority to strike part of the jury verdict at all..

**A. <u>Kirk's Domestic Violence Arrest in January 2023.</u>**

Mr. Keenan, contacted Ms. Harper, "JH's" counsel in the civil litigation the same afternoon he filed the Plea Agreement in this case May 1, 2025 to disclose the plea agreement he filed mere hours later. Of course the sweetheart deal was adamantly objected to in writing by plaintiffs' counsel, and Mr. Keenan was asked to be mindful of Kirk's January 18, 2023, **<u>domestic violence arrest for throwing his wife down in the same manner in which he threw down "JH" the year before</u>**. A diligent review of the U.S. Attorney's own file would also reveal deposition testimony of Trevor Kirk's mother-in-law, Colleen Madrid, in which she calls him "a piece of shit", "a narcissist", "a sociopath" and said that he coached

wife Megan Kirk to lie[3] the evening he was taken into custody by his own department.

B. **Tampering with witness testimony.**

Ms. Madrid testified that Defendant Kirk **threatened to bury Megan in the desert**. Witness tampering and domestic violence are not mentioned in the Plea Agreement but "J.H." requests the Court consider this information under USSG 1B1 which allows the Court to consider the other violent conduct of the defendant.

For whatever political reasons the Government acted to change its position, it is clear that the Government is no longer making best efforts to accord J.H. her right to be treated with fairness and with respect for her dignity in proposing a fiction that she was not injured, when she was severely injured by the Defendant. The government is also not acting in the best interest of the community because this deal puts Kirk back on patrol in another neighborhood soon. Investigations in the civil rights case has led to the belief that he already has an out-of-state offer to be a police officer if he beats the felony charge.

II. **A Crime Victim's Rights and Interests in a Federal Criminal Prosecution are Important and the Court must Ensure those Rights are Afforded**

Crime victims are independent participants in federal criminal prosecutions. In *Kenna v. U.S. Dist. Ct. for C.D.Cal.*, 435 F.3d 1011, 1013 (9th Cir. 2006), the Court stated,

> The criminal justice system has long functioned on the assumption that crime victims should behave like good Victorian children—seen but not heard. The Crime Victims' Rights Act sought to change this by making victims independent participants in the criminal justice process.

---

[3] https://www.youtube.com/watch?v=EN_ooCRedFg Deposition excerpt of Colleen Madrid, mother-in-law to Mr. Kirk.

*See also, Morris v. Slappy*, 461 U.S. 1, 14 (U.S. 1983) ("But in the administration of criminal justice, courts may not ignore the concerns of victims."). The Crime Victims' Rights Act, 18 USC § 3771 (CVRA) addressed issued identified by The Reagan Presidential Task Force on Victims of Crime, established in 1982 by President Reagan, aimed to improve the treatment of crime victims by examining existing policies and programs and recommending federal actions.  See https://ovc.ojp.gov/library/publications/final-report-presidents-task-force-victims-crime  18 USC § 3771(a) established the following rights for victims:

> (a) A crime victim has the following rights:
> (1) The right to be reasonably protected from the accused.
> (2) The right to reasonable, accurate, and timely notice of any public court proceeding, or any parole proceeding, involving the crime or of any release or escape of the accused.
> (3) The right not to be excluded from any such public court proceeding, unless the court, after receiving clear and convincing evidence, determines that testimony by the victim would be materially altered if the victim heard other testimony at that proceeding.
> (4) **The right to be reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceeding.**
> (5) **The reasonable right to confer with the attorney for the Government in the case.**
> (6) The right to full and timely restitution as provided in law.
> (7) **The right to proceedings free from unreasonable delay.**
> (8) **The right to be treated with fairness and with respect for the victim's dignity and privacy.**
> (9) **The right to be informed in a timely manner of any plea bargain** or deferred prosecution agreement[4].
> (10) The right to be informed of the rights under this section and the services described in section 503(c) of the Victims' Rights and Restitution Act of 1990 (42 U.S.C. §10607(c)) [1] and provided contact information for the Office of the Victims' Rights Ombudsman of the Department of Justice.  (emphasis added)

---

[4] Mr. Keenan only gave JH hours' notice.

Under 18 USC § 3771(b)(1), a court is to "ensure" crime victims are afforded their rights,

> In any court proceeding involving an offense against a crime victim, the **court shall ensure that the crime victim is afforded the rights** described in subsection (emphasis added)

The Supreme Court has recognized that victims of crime have powerful and legitimate interest in punishing the guilty. *Calderon v. Thompson,* 523 U.S. 538, 556 (1998). The jury finding of the Defendant committed a felony offense and the seriousness of those consequences provides J.H. a modicum of justice that recognizes the harm she received.

For whatever political reasons the Government acted to change its position, it is clear that the Government is no longer making best efforts to accord J.H. her right to treated with fairness and with respect for her dignity in proposing a fiction that she was not injured, when she was severely injured by the Defendant.

III. **The Department of Justice's Justice Manual (JM) suggests various reasons when pleas are appropriate and other conditions.** [5]

A. **Plea Agreements Generally per 9-27.400**
… Plea agreements should reflect the totality of a defendant's conduct. These agreements are governed by the same fundamental principles as are charging decisions: prosecutors will generally seek a plea to **the most serious offense** that is consistent with the nature and full extent of the defendant's conduct and likely to result in a sustainable conviction and proportional sentence, informed by an individualized assessment of all of the facts and circumstances of each particular case. …

---

[5] See. https://www.justice.gov/jm/jm-9-16000-pleas-federal-rule-criminal-procedure-11. The JM was previously known as the United States Attorneys' Manual (USAM).

**B. Plea Agreements—Considerations to be Weighed 9-27.420**

In determining whether it would be appropriate to enter into a plea agreement, the attorney for the government should weigh all relevant considerations, including:

1. The defendant's willingness to cooperate in the investigation or prosecution of others; (The defendant obstructed justice by charging "J.H." with criminal conduct and lying in his police report.)

2. The defendant's history with respect to criminal activity; (Defendant was arrested by his own department for domestic violence ***in front of*** his children in January, 2024 and accused of throwing his wife down in the same manner as he threw Ms. Houston down, he is also accused of ***threatening to bury her in the desert***.)

3. The nature and seriousness of the offense or offenses charged; (The Defendant abused the public trust and injured J.H. [attached photo of "JH" as Exhibit])

4. The defendant's remorse or contrition and his/her willingness to assume responsibility for his/her conduct; (The Defendant elected a trial and has denied all allegation during the civil litigation)

5. The desirability of prompt and certain disposition of the case; (There has already been a trial, wasted tax dollars and jury's time.)

6. The likelihood of obtaining a conviction at trial; (The Defendant has already been tried and a conviction was made on the **felony charge**)

7. The probable effect on witnesses;

8. The probable sentence or other consequences if the defendant is convicted;

9. The public interest in having the case tried rather than disposed of by a guilty plea;

10. The expense of trial and appeal; (There has already been a trial)

11. The need to avoid delay in the disposition of other pending cases; and (There has already been a trial). The Defendants actions and "Not-guilty" plea delay "JH's" civil rights trial that was set for May 2024 but "stayed" during the pendency of the criminal case. This caused her to remain in an area she was rather leave; kept her from obtaining closure and compensation for the injuries he inflicted. Still to this day JH has yet to receive those things

J.H.'s STATEMENT PER 18 USC § 3771

12. The interests of the victim, including any effect upon the victim's right to restitution. (J.H. disagrees with the plea which eviscerates the impact of her injuries and eliminates the possibility of a just sentence of the Defendant.)

### C. Selecting Plea Agreement Charges 9-27.430

If a prosecution is to be concluded pursuant to a plea agreement, the defendant should be required to plead to a charge or charges:

1. That ordinarily include the **most serious readily provable** offense consistent with the nature and extent of his/her criminal conduct; (The felony count has already been proven, and it reflects injuries to J.H.)

2. That have an adequate factual basis; (The felony count has already been proven, and it reflects injuries to J.H.)

3. That make likely the imposition of an appropriate sentence and order of restitution, if appropriate, under all the circumstances of the case; and (There will not be an appropriate sentence that does not fully consider the injuries to J.H.)

4. That do not adversely affect the investigation or prosecution of others. (The trial has already occurred).

A decision that a plea bargain will result in the defendant receiving too light a sentence under the circumstances of the case is a sound reason for a judge's refusing to accept the agreement. *United States v. Bean*, 564 F.2d 700, 704 (5th Cir. 1977) (Finding that a plea that allowed a defendant to plea to theft with a maximum sentence of five years rather than a maximum of ninety-nine years or life for burglary did not provide for imposition of a sentence commensurate with the offense and the dangerous character of the offender was proper).

The CVRA provided victims with a mechanism for participation in criminal cases. While victims are not parties, the court must ensure they are heard and their rights to be treated with fairness and with respect for the victim's dignity are accorded.

### IV. Government's newly supplemented cases do not fit the fact pattern here.

In one of the cases the government presented at the 11th hour is *United States v. Weber*, 721 F 2d. 266 (9th Cir. 1983) involving a Defendant that was convicted of conspiracy to defraud the Government and theft of government property. He was sentenced and appealed. After the appeal was dismissed to permit the Government to move for dismissal of the indictment, the trial court denied the motion to dismiss, and the appeal from the denial of the motion to dismiss was consolidated with the original appeal. The Court of Appeals held that where the trial court had "no question" that the United States Attorney harbored **_a good faith doubt as to the defendant's guilt_**, it was error to refuse to dismiss the indictment.

This reasoning cannot apply to what the government is doing in Kirk's case. They cannot say the US Atty has a good faith belief of Kirk's innocence. This is a purely political and thereby improper, reason that cabins the district court's discretion. U.S.S.G. §6B1.4. STIPULATIONS (POLICY STATEMENT)

> (a) A plea agreement may be accompanied by a written stipulation of facts relevant to sentencing. Except to the extent that a party may be privileged not to disclose certain information, stipulations shall:
> (1) set forth the relevant facts and circumstances of the actual offense conduct and offender characteristics;
> (2) **not contain misleading facts**[6]; and

Here again, the Court is aware of the facts that were heard by the jury. J.H. submits that a stipulation that J.H. was not injured despite the significant injuries **constitutes misleading facts for which the Court should not accept**. Moreover, the Court must honor victims' rights both related to the possible plea and the actual sentencing.

---

[6] The Plea Agreement differs from the Press Release from the government regarding Kirk's indictment & the Indictment: "The indictment also alleges that Kirk then drafted and submitted a misleading report to LASD in which he portrayed J.H. as a threat to his physical safety, claiming that J.H. assaulted him, attempted to hit him, and took a "fighting" or "blading" stance." The current Plea Agreement states that JH swiped at Kirk with her right hand. This appears nowhere in the civil depositions or the criminal trial and exists only in the mind of the new US Attorney and a Defendant seeking to avoid punishment in toto.

# CONCLUSION

The Defendant is a criminal who abused his authority to hurt an innocent senior citizen. Allowing the unapologetic Defendant to plea to the misdemeanor offense limits the maximum penalty to 12 months. **<u>A maximum sentence of 12 months would not adequately reflect the seriousness of the actual offense behavior</u>**. Accepting the Parties agreement will undermine the statutory purposes of sentencing and the sentencing guidelines as the Defendant avoids the possibility of multiple years of confinement. **<u>Moreover, the suggested plea agreement calls for probation and no incarceration.</u>** The proposed fiction that J.H. was not injured creates a travesty of justice where it basically amounts to no significant punishment to the Defendant and it allows the Defendant to continue as a law enforcement employee, and as such in a position where he can injure other individuals. While defense counsel portrays the Defendant as a hero and not a criminal, that is a false and deceptive description as the evidence found demonstrates he unjustly harmed a vulnerable woman who posed no harm to him. As this Court found, there was sufficient evidence for a jury to find the Defendant had used "objectively unreasonable force."

No authority exists for a post-verdict plea in this case absent **<u>good cause or error</u>**. Even if there was authority, there is no justification that a plea should be offered other than politics which is an inappropriate judicial consideration. The Government's attempted abandonment of the jury verdict reflecting <u>injury to J.H.</u> would give favored treatment to the Defendant in this case because of politics. To preserve the integrity of the judicial process, the extraordinary relief sought must be denied.

DATED: 5/16/25     LAW OFFICES OF CAREE HARPER

<u>/s/ Caree Harper</u>
Caree Harper
Attorney for "JH"

J.H.'s STATEMENT PER 18 USC § 3771