**TOM YU (CA Bar 306699)**
155 North Riverview Drive, Suite 305
Anaheim Hills, CA 92808
Office: (844) 998-1033
tyu@tomyulaw.com

**EDWARD M. ROBINSON (CA Bar 126244)**
**BRIAN A. ROBINSON (CA Bar 333650)**
21515 Hawthorne Blvd, Suite 200
Torrance, CA 90503
Office:  (310) 316-9333
Facsimile: (310) 316-6442
eroblaw@gmail.com

Attorneys for Defendant
*TREVOR JAMES KIRK*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>TREVOR JAMES KIRK,<br><br>　　　　　Defendant. | Case No. 24-cr-00527-SVW<br><br>**DEFENDANT TREVOR KIRK'S NOTICE OF MOTION AND UNOPPOSED MOTION FOR BAIL PENDING APPEAL; 18 U.S.C. § 3143; FRAP 9(b); DECLARATION OF COUNSEL**<br><br>DATE: July 21, 2025<br>TIME: 11:00 a.m.<br>Courtroom of the Honorable Stephen V. Wilson |

**PLEASE TAKE NOTICE** that on July 21, 2025, at 11:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable Stephen V. Wilson, United States District Judge, defendant Trevor James Kirk, by and through is attorneys of record, Tom Yu, Edward M. Robinson, and Brian A. Robinson, will move for bail pending appeal.

This motion is based upon the attached memorandum of law, all filed and records in this matter, and any other evidence or argument presented to the Court at a hearing on this motion.

Respectfully submitted,

DATED: July 7, 2025          By  /s/ *Brian A. Robinson*
                                 Brian A. Robinson
                                 Edward M. Robinson
                                 Tom Yu
                                 Attorneys for Defendant
                                 *Trevor James Kirk*

ii

# INTRODUCTION

On June 3, 2025, the Court sentenced Mr. Kirk to 4 months in custody, to be followed by one year of supervised release with various terms and conditions. On June 6, 2025, Mr. Kirk filed a Notice of Appeal. (Doc. 112.) Mr. Kirk now moves the Court for bail pending appeal. Mr. Kirk poses no danger to the community, and given that his family, community ties, and support system all live in Los Angeles County, he poses no flight risk. For the entire time this case has been pending, Mr. Kirk has been released on bond and has never attempted to flee.

Moreover, Mr. Kirk raises substantial questions likely to result in reversal or new trial and are most definitely not for the purpose of delay. The Court need not agree that any errors were committed or that Mr. Kirk's conviction will be reversed on appeal; the Court need only find that the issues to be raised on appeal are fairly debatable. The validity of Mr. Kirk's conviction is certainly subject to fair debate.

# ARGUMENT

Under 18 U.S.C. § 3143(b) the district court shall order the continuation of release on personal recognizance or modify bond conditions for a defendant who has filed an appeal if the court finds:

(A) By clear and convincing evidence that the defendant is not likely to flee or pose a danger to others and the community; and

(B) That the defendant's appeal is not for purposes of delay and raises a substantial question likely to result in (1) reversal; (2) an order for new trial; (3) a sentence that does not include a term of imprisonment; or (4) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b)(1).

If the Court makes such findings, granting bail pending appeal is mandatory. *Id*. ("If the judicial officer makes such findings, such judicial officer shall order the release

of the person in accordance with section 3142(b) or (c) of this title…") These conditions for bail pending appeal are met here.

### I. There is Clear and Convincing Evidence that Mr. Kirk is Not Likely to Flee or Pose a Danger to the Safety of Others of the Community if He is Released Pending Appeal.

Mr. Kirk is neither a flight risk nor danger to the community. He is a first-time offender with no prior criminal history. The Court has acknowledged that Mr. Kirk does not pose a flight risk and after sentencing has allowed him to remain out of custody with a surrender date of August 28, 2025. Moreover, Mr. Kirk has never made any attempt to flee, he has made every court appearance as ordered and has abided by all release conditions.

Most importantly, Mr. Kirk has lived his entire life in Los Angeles County and continues to have strong community ties to Los Angeles County. Mr. Kirk lives with his wife and two young children, a 6-year-old daughter and a 3-year-old son. Mr. Kirk's wife is a stay-at-home mom, and his family relies on him both emotionally and financially. Mr. Kirk is the sole financial supporter of his family. Currently, he works fulltime doing demolition work for Conejo Restoration, a mold and fire restoration company in Newbury Park.

As such, this is clear and convincing evidence that if bail is granted pending appeal, Mr. Kirk will not flee and will not pose a danger to the community or any other person.

### II. The Appeal is Not for Delay and Raises Substantial Questions.

The Ninth Circuit has repeatedly made clear that a defendant need not establish in their motion for bail pending appeal that their claims will, in fact, result in a reversal of their conviction or a reduction in sentence. Instead, they need only show that they have "a non-frivolous issue that, if decided in his favor, would likely result in reversal[,]" a new trial, or a reduced sentence for less than the expected duration of the appellate process. *United States v. Garcia*, 340 F.3d 1013, 1020 n.5 (9th Cir. 2003).

For purposes of bail pending appeal, therefore, the relative merits of a defendant's appellate claims are not what is key. As the Ninth Circuit explained in *Garcia*, the analysis "does not involve assessing the likelihood that a reversal will occur in the particular case." 340 F.3d at 1020 n.5 (citing *United States v. Handy*, 761 F.2d 1279, 1280 (9th Cir. 1985)).[1] Rather, the Court must decide whether the defendant has raised a "substantial question," which has been defined as one that "present[s] unique facts not plainly covered by the controlling precedents" or "is one of more substance than would be necessary to a finding that it was not frivolous." *Handy*, 761 F.2d at 1281, 1283; *see also United States v. Wheeler*, 795 F.2d 839, 840 (9th Cir. 1986) (a "'substantial' question is one that is fairly debatable or fairly doubtful.").

Thus, to prevail on a motion for bail pending appeal, Mr. Kirk need only show that his motion raises non-frivolous claims of such a ponderable legal significance that, if decided in his favor, would result in a reversal or a new trial.

### A. It is at Least Fairly Debatable Whether the Government Presented Sufficient Evidence to Sustain a Conviction on the Offense Charged.

Mr. Kirk was convicted of Deprivation of Rights Under Color of Law under 18 U.S.C. § 242. This statute requires that the government prove beyond a reasonable doubt that Mr. Kirk deprived J.H. of a right which is secured or protected by the Constitution or laws of the United States—in this case, J.H.'s right to be free from the use of unreasonable force, and that Mr. Kirk acted willfully to deprive J.H. of such a right. To prove that Mr. Kirk acted willfully, the government was required to prove beyond a reasonable doubt that Mr. Kirk acted voluntarily and intentionally, with a specific intent to use more force than necessary under the circumstances.

---

[1] In fact, in *Handy*, the Court expressly rejected the government's position that bail pending appeal is limited to defendants who can demonstrate that they will probably prevail on appeal, calling such a proposition "untenable." 761 F.2d at 1280. The Court explained that "Congress did not intend to limit bail pending appeal to cases in which the defendant can demonstrate at the outset of appellate proceedings that the appeal will probably result in reversal or an order for a new trial." *Id.*

Here, it is at least fairly debatable that the government failed present evidence sufficient to prove beyond a reasonable doubt that Deputy Kirk deprived J.H. of her right to be free from the use of unreasonable force and that Deputy Kirk acted willfully.

### a. Excessive Force

The Court instructed the jury on multiple factors to be considered when determining excessive force. While not exclusive, these factors include "the severity of the crime, if any; the extent, if any, to which [J.H.] posed a threat to the safety of [Deputy Kirk] or to any other person; the extent, if any, to which [J.H.] was physically resisting arrest or attempting to flee at the time force was used; the extent of the injury suffered, if any, by [J.H.]; and the effort made, if any, by [Deputy Kirk] to temper or limit the amount of force." (Doc. 53, p. 10).

The evidence is uncontroverted that J.H. was an identified suspect in an in-progress felony robbery call for service. The Sheriff's dispatch also informed Deputy Kirk that the suspects had been fighting with store security. Armed with this information, per his training, Deputy Kirk attempted to legally detain J.H. While Deputy Kirk approached J.H., she was recording his and his partner deputies' detention of the other identified robbery suspect. Per his training, Deputy Kirk attempted to secure J.H.'s hands as part of her legal detention despite J.H.'s insistence that Deputy Kirk could not touch her. The evidence at trial was undisputed that Deputy Kirk had a right and an obligation to detain J.H. and that her proclamation was a form of resistance and legally indefensible. As testified by the government's witness, Deputy Jose Diaz, the Sheriff's Department trainer in tactical communications, it is not escalating force to detain a suspect. (RT, 02-04-25, pg. 126.)

While attempting to legally detain J.H., J.H. swung her arm and hit Deputy Kirk, thereby escalating the situation. In light of J.H.'s immediate resistance and assaultive behavior, Deputy Kirk grabbed J.H.'s arm to ensure she would not attempt to hit him again. J.H. continued to actively resist Deputy Kirk's attempts to gain control. Despite being told to "stop" a number of times, J.H. continued to actively resist and, as trained,

Deputy Kirk performed a takedown to overcome J.H.'s resistance. While on the ground, J.H. continued to actively resist by attempting to get up and ignoring Deputy Kirk's vocal commands. Deputy Kirk, in an attempt to gain J.H.'s compliance and in accordance with his training, performed a "ruse" by threatening to punch J.H. if she continued to resist. Despite J.H.'s failure to heed Deputy Kirk's ruse, Deputy Kirk did not punch J.H. and resorted to a lesser form of force, per his training, O.C. spray. Deputy Kirk's first attempt to use O.C. spray on J.H. missed her eyes and hit the side of her head so he deployed his O.C. spray again. Finally, Deputy Kirk successfully detained J.H., and per his training, immediately radioed for an ambulance for J.H.

This series of events does not prove beyond a reasonable doubt that Deputy Kirk used excessive force. Rather, it proves that Deputy Kirk used the minimal amount of force necessary to execute his duties as a law enforcement officer, as he was trained, and detain a resistant robbery suspect. As the government's own expert, Rodger Clark, made clear under cross-examination, "[i]f it is that [a suspect] refuse[s] to consent to the detention, which is different than arrest, then force can be used—then force could be used to keep them in place, pending the investigation." (RT, 02-05-25, pg. 168). This is precisely what occurred in this case.

Throughout the trial, the government argued that Deputy Kirk retaliated against Ms. Houseton for filming him. The government's argument to the jury, however, refused to acknowledge the fact that Deputy Kirk, at the time he placed his hands on J.H., had a legal right and obligation to physically detain her. The government's witnesses made this clear. As Sergeant Ismael Opina, the government's use of force witness, testified on cross-examination, deputies are not trained to wait for a robbery suspect to finish recording before detaining that suspect. (RT, 02-05-25, pg. 62). The Sheriff's Department policy on retaliatory force used on someone videotaping deputies only concerns innocent bystanders, it does not apply to a robbery suspect that is being detained. *Id*. at 63.

5

J.H.'s active resistance allowed Deputy Kirk to use force to effectuate the lawful detention. Viewing the evidence as the law requires, not with the benefit of 20/20 hindsight but in deference to the realities of law enforcement, it is at least fairly debatable that the government presented sufficient evidence to prove beyond a reasonable doubt that Deputy Kirk deprived J.H of her right to be free from the use of unreasonable force.

### b. Willfulness

The sufficiency of the evidence with respect to willfulness suffers from the same infirmity as the evidence concerning excessive force. As with excessive force, the government's argument that Deputy Kirk acted willfully hitched almost entirely to the proposition that Deputy Kirk's physical contact with J.H. was motivated by his anger towards her and his desire to retaliate because she was filming him. However, the government's witnesses testified unequivocally that pre-detention commands were not required per policy and that, again, Deputy Kirk had a legal right and obligation to detain J.H. to investigate the 'ongoing robbery' of suspects who were fighting with store security. The evidence at trial established that Deputy Kirk was acting as he had been trained.

Deputy Jose Diaz was called as a witness for the government to testify to the training Deputy Kirk received regarding "strategic communications." Deputy Diaz testified that, while preferable, deputies are not required to engage in verbal communications with a suspect as opposed to going hand on to detain. When asked if deputies are instructed on using "communications as opposed to going hands on…", Deputy Diaz testified; "Not necessarily opposed. Again, there is a constant assessment and reassessment when they are in any situation or incident, and they have to make that judgment call on their own to say, if they chose to use force, then have to explain why." (RT, 02-04-25, pg. 100). Additionally, Deputy Diaz testified that "if I have information that [someone] may have been involved in a crime, then I would want to detain them and start asking questions about if there was an involvement with them or not." *Id*. at

6

101-102. Deputy Diaz further testified that simply because someone does not want to be detained does no mean deputies have to stop what they are doing. Under Sheriff's Department policy, deputies have a duty to apprehend criminals and they cannot just let them walk away. *Id*. at 124.

  On cross-examination, Deputy Diaz testified regarding the way deputies are trained to respond to robbery calls specifically. In testimony that properly contextualized the preference for, but not the need to de-escalate to conform to policy, Deputy Diaz testified that, on a robbery call, deputies are trained to secure suspects, to handcuff them and pat them down for weapons. Exigency is not required to secure the scene; it is for officer safety. *Id*. at 126. Critically, Deputy Diaz testified, detaining a suspect is not the same as escalating force. *Id*. Before engaging in any investigation, deputies are trained they have to detain the suspect first. *Id*. at 127.

  Sergeant Opina was called as a witness for the government to testify to the training Deputy Kirk received regarding "use of force." On direct examination, Sergeant Opina testified that deputies are trained "that they do not have a duty to retreat." (RT, 02-05-25, pg. 14). Regarding takedowns, Sergeant Opina made it clear that "takedowns are dynamic in nature," and deputies "can't always train for where [a] person lands. The goal of a takedown is to get the person to the ground to gain safe control and be able to control them." *Id*. at 29. Furthermore, on cross-examination, Sergeant Opina testified that if a suspect makes "a swapping" motion, as J.H. did in this case, that is a "factor to consider on a threat level." *Id*. at 57.

  In this case, it is at least fairly debatable that the evidence presented at trial was insufficient to prove beyond a reasonable doubt that Deputy Kirk acted wilfully, that is voluntarily and intentionally, with a specific intent to use more force than necessary under the circumstances. The evidence makes it undeniably clear that Deputy Kirk used the amount of force necessary to detain a resistant robbery suspect prior to an investigation.

7

## CONCLUSION

For the reasons set forth above, Deputy Kirk respectfully requests that this Court grant his motion for bail pending the resolution of his appeal.

Respectfully submitted,

DATED: July 7, 2025          By  */s/ Brian A. Robinson*
                                 Brian A. Robinson
                                 Edward M. Robinson
                                 Tom Yu
                                 Attorneys for Defendant
                                 *Trevor James Kirk*

8

**DECLARATION OF COUNSEL**

I, Brian A. Robinson, hereby declare as follows:

    1.    I am counsel of record for Trevor James Kirk in the above-referenced matter, case no. 24-cr-00527-SVW.

    2.    Assistant United States Attorney Rob Keenan has informed defense counsel that the government does not oppose this motion for bail pending appeal.

I declare under penalty of perjury that the above is true and correct. Executed this 7th day of July 2025, in Torrance, California.

By  */s/ Brian A. Robinson*
Brian A. Robinson
Attorney for Defendant
*Trevor James Kirk*

9