Caree Harper SBN 219048
Law Offices of Caree Harper
401 Wilshire Blvd. Suite 1200
Santa Monica, CA 90401
Telephone: (213) 386-5078
Email: *ch1@attorneyharper.com*

Paul G. Cassell (Utah Bar 6078[*])
S.J. Quinney College of Law
University of Utah
Salt Lake City, UT 84112
Telephone: (801) 585-5202
Email: *cassellp@law.utah.edu*
(no institutional endorsement implied)

Attorneys for Victim "J.H."

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>    vs.<br><br>TREVOR JAMES KIRK,<br><br>                    Defendant.<br><br>J.H., Victim | CASE NO.: 2:24-CR-00527-SVW<br><br>**CRIME VICTIM'S SUPPLEMENTAL OBJECTION TO THE GOVERNMENT'S MOTION TO DISMISS & NOTICE OF AVAILABILITY TO DEFEND THE CONVICTION AT NINTH CIRCUIT**<br><br>**DATE:**    **August 4, 2025**<br>**TIME:**    **11:00 a.m.**<br>**PLACE:**   **350 W. 1st St Ctrm. 10-A**<br>          **Los Angeles, CA 90012** |

*///*

* *Pro hac vice motion to be filed.*

**J.H.'s SUPPLEMENTAL OBJECTION TO GOVERNMENT MOTION TO DISMISS**

### **Introduction.**

This matter is before this Court on the Government's motion to dismiss a criminal conviction of a police officer for a civil rights violation that the Government duly obtained through a jury trial. ECF No. 121. The recognized victim of the police officer's crime—J.H.—has objected. ECF No. 122. The Government has now supplemented its motion to dismiss, noting a "question" about jurisdiction. Dkt 126. J.H. now responds to the Government's evasive supplement with her own supplement.

This Court must deny the Government's motion to dismiss, because it no longer possesses jurisdiction. More than eight weeks ago, the Defendant filed a notice of appeal and took his efforts to overturn his conviction to the Ninth Circuit. Whether the Government can now dismiss this case must be addressed by the Ninth Circuit.

Perhaps recognizing (but not admitting) the lack of jurisdiction, the Government also asks this Court for an advisory opinion—specifically, an "indicative" ruling that it would grant a motion to dismiss if the Ninth Circuit were to later remand this case. The Court should deny the request for an indicative ruling, because the Government has failed to make a "timely motion" for relief, as required by Fed. R. Crim. P. 37(a).

In any event, the Court lacks jurisdiction to rely on Rule 37(a), not only because of the Defendant's pending appeal but also because the Government is asking for an advisory opinion of how the Court might proceed *if* certain events were to occur in the future. The Court is not permitted to give speculative advice on how things might unfold.

Finally, if the Court is inclined to indicate how it would rule on a motion to dismiss in the future, on this exceptional record, the Court should indicate that it would deny the motion. The Government's purported reasons for the dismissal are after-the-fact, pretextual, and unpersuasive. At bottom, the Government relies only

**J.H.'s SUPPLEMENTAL OBJECTION TO GOVERNMENT MOTION TO DISMISS**

on the fact that it is not inclined to defend the conviction on appeal. But it would be clearly contrary to the manifest public interest for the Court to dismiss this case on such flimsy grounds. Indeed, it appears that the Government's true basis for the dismissal motion is that it objects to the Court's prison sentence. The Court should not allow the Government to subvert a duly imposed sentence for a serious crime.

### Relevant Factual Background

This case began on September 4, 2024, when the Government filed a one-count indictment against the Defendant, Trevor James Kirk. ECF No. 1. The indictment alleged that Defendant, a sworn law enforcement officer in the Los Angeles County Sheriff's Department ("LASD"), used excessive force against J.H. more than a year earlier.

Specifically, the indictment alleged that, on June 24, 2023, while responding to a call for service at a grocery store in Lancaster and handcuffing another individual, Defendant encountered J.H. She was seated in her car, and then left her car to film the Defendant with her phone.

Then, Defendant approached Victim J.H. Without giving her any commands, Defendant attempted to grab her phone. J.H. turned away from Defendant, meaning Defendant was unable to seize the phone. So Defendant grabbed J.H. by her arm, hooked his left hand behind her neck, and violently threw her to the ground. While on the ground, defendant yelled at J.H. to "get on the ground." J.H. responded, "It's already on YouTube Live," implying that her video had already been made public. Defendant replied, "Stop, I don't give a sh** . . . ."

 Defendant then stuck his knee on J.H.'s shoulder. When J.H. yelled at Defendant to "stop," Defendant cocked his right arm back with a clenched fist and said, "Stop or you're gonna get punched in the face."

J.H. told Defendant that she would sue him if he punched her. J.H. also said, "I got it on camera," again referencing that she had recorded the events.

**J.H.'s SUPPLEMENTAL OBJECTION TO GOVERNMENT MOTION TO DISMISS**

Defendant then pressed his knee into J.H.'s neck. J.H. said, "Get your neck off my . . . off my . . . I can't breathe."

While on top of Victim J.H., Defendant used his LASD radio to misleadingly report that he was "in a fight." Shortly thereafter, without giving any additional commands to J.H., Defendant sprayed J.H. twice in the face with "pepper spray." As a result, J.H. received medical treatment at a hospital approximately 40 minutes after the assault. In addition to physical pain, J.H. suffered various physical injuries.

The indictment recounted the foregoing facts and charged Defendant with the felony of depriving Victim J.H. of her rights under color of law, in violation of 18 U.S.C. § 242. Specifically, the indictment alleged that Defendant, "a sworn law enforcement officer employed by LASD, while acting under color of law, assaulted Victim J.H., including with a dangerous weapon, namely, … pepper spray, and caused bodily injury to Victim J.H., and thereby willfully deprived Victim J.H. of rights secured and protected by the Constitution and the laws of the United States, namely, the right to be free from the use of unreasonable and unnecessary force by a law enforcement officer." ECF No. 1 at 5.

After further proceedings not relevant here, on February 4, 5, and 6, 2025, the Court held a jury trial on the charge. Both the Government and Defendant presented their evidence and made their arguments. The jury found Defendant guilty as charged of a felony civil rights violation. ECF No. 51.

Thereafter, on February 20, 2025, Defendant filed a motion to set aside the verdict. ECF No. 63. Defendant argued that the Government had failed to introduce sufficient evidence to demonstrate that he had used excessive force and had acted willfully. *Id.* at 3-9.

On March 17, 2025, the Government responded in detail to the Defendant's motion. The introduction from the Government's response demonstrates how strong the Government's case was at trial:

**J.H.'s SUPPLEMENTAL OBJECTION TO GOVERNMENT MOTION TO DISMISS**

The government's evidence was direct and comprehensive, providing jurors with video evidence of defendant's use of excessive force against victim J.H. from multiple views and perspectives. The jury had a uniquely inside and unvarnished look at the central events at issue, including defendant's words and actions before, during, and after the incident, as well as his partner's contrasting words and actions. Los Angeles County Sheriff's Department ("LASD") policies and training further established that force was supposed to be used as a "last resort," contrary to defendant's immediate resort to force after seeing J.H. filming him on her cellphone. And an expert with nearly three decades of experience at LASD explained how defendant's conduct was contrary to LASD's force policies and training.

ECF No. 68 at 1. The Government's response elaborated, in detail, why the Defendant's arguments lacked any support. *Id.* at 2-25.

Several weeks later, on April 10, 2025, the Government filed a "stipulation" to continue Defendant's sentencing for months—from May 19, 2025, to August 18, 2025. ECF No. 69.

Three days later, on April 13, 2025, the victim—J.H.—filed her objection to the proposed lengthy delay. ECF No. 70.

Five days later, on April 18, 2025, the Court denied the defendant's motion for judgment of acquittal, with a detailed ruling recounting the evidence. ECF No. 75. With respect to the excessive force issue, the Court explained that, at trial, the "Government presented extensive body cam footage of the incident between Defendant and J.H. That footage revealed that, prior to Defendant's use of force, J.H. was filming Defendant and his fellow officer handcuff J.H.'s associate …. From her appearance and demeanor, a jury could rationally find that she was not actively committing a crime or holding a weapon. When Defendant first approached J.H., he did not provide any commands or try to de-escalate the situation. Rather, he threw her to the ground, pinned her there, and pepper sprayed her face two times." *Id.* at 3.

**J.H.'s SUPPLEMENTAL OBJECTION TO GOVERNMENT MOTION TO DISMISS**

With respect to the willfulness issue, the Court explained that "the jury heard evidence that Defendant received hundreds of hours of training on the use-of-force, force prevention, and de-escalation [citing evidence] …. Not only did Defendant receive this training, but it was fresh of mind. … That Defendant nonetheless used force on J.H. without attempting to de-escalate is evidence that he intended to use unreasonable force." *Id.* at 4.

In light of the Government's overwhelming evidence, the Court denied the motion to set aside the jury's verdict. *Id.*

Three days after denying the motion, on April 21, 2025, the Court held a status conference. ECF No. 76. The Court denied the Government's motion to continue sentencing. Sentencing remained set for May 19, 2025.

As sentencing was approaching, the Government became represented by new counsel. ECF No. 81. And on May 1, 2025, the Government and Defendant filed a proposed plea agreement, with a stipulated sentence under Fed. R. Crim. P. 11(c)(1)(C). ECF No. 82. Under the proposed "binding" plea agreement, Defendant planned to withdraw his plea of not guilty and "admit that, as the [Government] proved at trial and the jury found, he is in fact guilty of the lesser-included misdemeanor violation of Deprivation of Rights Under Color of Law," in violation of 18 U.S.C. § 242. *Id.* at 2-3. Defendant further agreed not to contest the facts set forth in the plea agreement. *Id.* at 3. In exchange, the Government proposed to strike the jury's finding as to question two on the verdict form, reducing the conviction from a felony to a misdemeanor. *Id.* at 4. The Government, joined by Defendant, agreed to a proposed sentence of a one-year term of probation, a fine of not greater than $5,500.00 and restitution, if any, to be determined by the Court. *Id.* at 10.

On May 6, 2025, the Court reviewed the proposed plea and questioned whether it possessed authority to "strike" the jury's finding on its verdict form.

ECF No. 90. The Court requested briefing on the issue. *Id.* at 1. Thereafter, the Government filed two briefs on the issue. *See* ECF Nos. 94 & 95.

In its first brief, filed on May 13, 2025, the Government defended its proposed binding plea agreement. ECF No. 94. The Government noted Defendant's agreement to plead guilty to the misdemeanor charge. *Id.* at 2. On the issue of the appropriate sentencing Guidelines, the Government abruptly changed its earlier position. While the Government had previously proven Defendant guilty of a felony at trial, now the Government argued that the evidence failed to demonstrate the required seriousness (even though it had earlier submitted to the Probation Office a memorandum demonstrating the relevant facts). *See id.* at 6 (alleging that the Probation Office had misapplied the Guidelines but conceding its calculation was previously "urged erroneously by the Government"). Under its new position, the Government claimed that the applicable sentencing guideline was not the one for "aggravated assault." The Government claimed that Defendant had not deployed pepper stray in the face with the intent to cause bodily injury. *Id.* at 8. And the Government further argued that, while J.H. had suffered injury, that injury (in its view) did not rise to the level of serious bodily injury. *Id.* at 11. Accordingly, the Government argued for its binding plea agreement, with its recommended sentence of probation. *Id.*

Two days later, on May 15, 2025, after "further research on the matter," the Government filed a supplemental submission. ECF No. 95 at 1. In this filing, the Government argued that, under Fed. R. Crim. P. 48(a), it could move to dismiss— and the Court had the power to dismiss—parts of indictment that the jury had found to be proven at trial. *Id.* at 2.

Victim J.H. also submitted a statement regarding sentencing, explaining why there was no good cause for overturning the jury's felony guilty verdict. J.H. also urged the Court to be mindful of Defendant's earlier domestic violence arrest for throwing his wife down in the same way in which he threw J.H. down. ECF No. 99

**J.H.'s SUPPLEMENTAL OBJECTION TO GOVERNMENT MOTION TO DISMISS**

at 5. J.H. urged the Court to maintain the jury's verdict, reflecting injury to J.H. *Id.*
at 12. She argued that overturning the verdict "would give favored treatment to the
Defendant in this case because of politics." *Id.*

On May 19, 2025, Court held a sentencing hearing. The Court allowed J.H.
to address the Court. The Court also heard the Government and Defendant's
position on the dismissal under Rule 48(a).

On May 27, 2025, the Court granted, in part, the Government's motion to
dismiss portions of the indictment raising the crime to the felony level, but rejected
the parties' proposed binding plea agreement. ECF No. 103. In a detailed order, the
Court explained that, under Fed. R. Crim. P. 48(a), the Government had the
prerogative to determine whether it remained in the interest of justice to pursue a
felony-level charge. The Court noted that the Government took the position that a
misdemeanor conviction was more consistent with the facts of the case. *Id.* at 3. In
light of the Government's new view, the Court granted the motion to dismiss the
felony allegations in the indictment. *Id.* at 4-5. At the same time, the Court refused
to strike the part of the jury's verdict that found the felony allegations were proven
beyond a reasonable doubt. *Id.* at 5-6. As a result, Defendant remained convicted
of a misdemeanor charge for using excessive force. *Id.* at 6.

The Court then turned to the parties' proposed binding plea agreement.
Exercising its review authority, the Court rejected the plea agreement. The Court
found that a probationary disposition would fail to reflect the seriousness of
Defendant's crime:

> **As to the parties stipulated sentence of one-year probation, the Court**
> **rejects this agreement. Straight probation does not match the facts of**
> **this case.** Defendant committed the offense—the willful use of
> unreasonable force—while acting under color of law as a police officer.
> Police officers are entrusted with protecting the public, not harming them.
> By willfully using unreasonable force against J.H., Defendant broke that

trust. A sentence of straight probation does not sufficiently reflect Defendant's breach of duty and the manner in which he breached that duty.

ECF No. 103 at 6-7. The Court set a further sentencing hearing for one week later. *Id.*

On May 29, 2025, the Government filed a sentencing memorandum. In light of the Court's ruling rejecting straight probation, the Government urged a sentence of three-months home confinement. ECF No. 104 at 1-2. The Government claimed that such as a sentence was sufficient "to account for defendant's 'breach of duty' and the 'manner' of that breach." *Id.* at 2.

The next day, May 30, 2025, Defendant joined the Government's sentencing memorandum. ECF No. 108.

On June 2, 2025, the Court held a sentencing hearing and sentenced Defendant to four months imprisonment. ECF No. 109.

In light of this lenient sentence, J.H. immediately sought further review in the Ninth Circuit of the issue of reducing the charge from a felony to a misdemeanor. She filed a petition for review under the Crime Victims' Rights Act ("CVRA"), 18 U.S.C. § 3771(d)(3). The Ninth Circuit denied the petition. The Circuit concluded that this Court had properly afforded J.H. her right to be heard on sentencing issues when the Court allowed her to speak at the sentencing hearing. *In re J.H.*, 138 F.4th 1347 (9th Cir. June 5, 2025).

The next day, June 6, 2025, the Defendant filed in this Court a "Notice of Appeal" to the Ninth Circuit: "Notice is hereby given that Trevor James Kirk hereby appeals to the United States Court of Appeals from the Ninth Circuit from" his conviction." ECF No. 112 at 1. Following that notice, the Ninth Circuit assigned a case number to the Defendant's appeal, specifically Ninth Circuit No. 25-3607. Thereafter, the Ninth Circuit began handling the matter. For example, Defendant has filed his designation of the appellate record. *See* ECF No. 118.

While his appeal moved forward in the Circuit, on July 7, 2025, Defendant made a motion for bond pending appeal. ECF No.117.[1] The Court denied that motion and set a self-surrender date at the end of August. ECF No. 119.

On July 29, 2025, more than seven weeks after the case had progressed to the Ninth Circuit, the Government filed a motion in this Court to dismiss the charge under Fed. R. Crim. P. 48(a). ECF No. 121. The motion was only five sentences long. The Government did not explain why it was moving to dismiss a case where it had obtained a guilty verdict to a felony civil rights violation.

The next day, J.H. objected. ECF No. 122.

Late in the afternoon on Friday, August 1, 2025, the Government filed a "Supplement" to its motion to dismiss. The Government's supplement admitted a "question" about this Court's jurisdiction—but did not provide any answer. *Id.* at 1. Perhaps recognizing that this Court lacks jurisdiction, the Government also asked, "in the alternative," for an "indicative ruling" under Fed. R. Crim. P. 37(a) about how, if the Ninth Circuit were to remand, this Court might rule on the motion to dismiss. *Id.* at 1-2. As for the basis for the dismissal, the Government stated tersely that it has "determined that the interests of justice warrant dismissal of the case and has elected to not defend the conviction on appeal. With that decision now having been made, an order dismissing the case and vacating the judgment is the proper course of action." *Id.* at 3.

### J.H. Has a Right to Be Heard on the Motion to Dismiss

Now that the Government has moved to dismiss this case, J.H. has the right to be heard in opposition to the motion. Indeed, this Court has already scheduled a hearing, where it can afford her that opportunity. ECF No. 125.

---

[1] Fed. R. App. P. 8 specifically gives a district court authority to handle a bond motion even while an appeal has taken the case to the Court of Appeals.

The Government does not appear to dispute that the J.H. has a right to be heard on the motion to dismiss. *See* ECF No. 126. And Defendant has filed nothing in opposition to her being heard either.

The Court should reject any effort to keep J.H. from being heard regarding the motion to dismiss. Of course, as this Court has discussed in its earlier rulings, any dismissal requires "leave of court." *See* Fed. R. Crim. P. 48(a). Appellate courts recognize that when evaluating a proposed dismissal, a district court "retains adjudicatory responsibility, including an obligation to apply the [Crime Victims' Rights Act]. Public perception and confidence in the criminal justice system assume that when criminal charges are submitted for judicial resolution, the courts vigilantly will enforce the public interest, including Congress' command that crime victims are heard and protected." *In re Ryan*, 88 F.4th 614, 626 (5th Cir. 2023). Thus, as the Fifth Circuit has explained, when a Court considers a Rule 48(a) dismissal motion, "the public interest, especially that of crime victims, rests crucially on court approval. In short, the judicial role stays present and constant throughout, and courts must validate the public interest, above all, including rights that Congress has given to crime victims." *Id.* And the Fifth Circuit cited with approval a district court opinion, which held that "before granting any motion by the government under Rule 48(a) to dismiss charges involving a specific victim, the court must have the victim's views on the motion." *United States v. Heaton*, 458 F. Supp. 2d 1271, 1273 (D. Utah 2006).

To be sure, on a different issue, the Ninth Circuit recently concluded that J.H. was not entitled to the relief of altering the Court's sentence. *See In re J.H.*, 138 F.4th at 1348. But that ruling was predicated on the fact that this Court had previously reviewed a filing from J.H. and had allowed her to address the Court at sentencing. *Id.* Similarly here, J.H. is entitled to present her arguments against dismissal, particularly where they go to this Court's jurisdiction. Failing to allow J.H. to be heard would itself deny her the right to be "treated to fairness" under the

C.V.R.A. *See* 18 U.S.C. § 3771(a)(8). And commentators who have carefully analyzed the CVRA recognize that hearing from victims is important as district courts consider whether to grant leave to dismiss a charge. *See* Paul G. Cassell, *Recognizing Victims in the Federal Rules of Criminal Procedure: Proposed Amendments in Light of the Crime Victims' Rights Act*, 2005 BYU L. Rev. 835, 918.

Finally, as the Government admits, a jurisdictional issue has arisen. Courts have an "independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Star Fabrics, Inc. v. Cinteg Corp.*, 2025 WL 2084108 (C.D. Cal. July 23, 2025) (citing *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 1237 (2006)). J.H. is entitled to assist the Court in discharging its *independent* obligation to determine jurisdiction. And she is entitled to have the Court treat her with fairness, 18 U.S.C. § 3771(a)(8), by handling this case under an accurate understanding of law and jurisdiction.

## Discussion

Following Defendant's appeal to the Ninth Circuit, **this Court lacks jurisdiction over this case.** Accordingly, it must deny the Government's motion to dismiss on jurisdictional grounds. The Government has plainly filed in the **wrong court.**

Perhaps realizing (but not admitting) that this Court lacks jurisdiction, the Government nonetheless persists by asking this Court, in the alternative, to provide an "indicative" ruling of what it might do were the Ninth Circuit to remand the case back. The Government cites Fed. R. Crim. P. 37(a), which requires a "timely" motion for an indicative ruling. The Government does not explain why its motion is timely and, in any event, its motion is not timely. The Court should not issue an indicative ruling.

Moreover, an "indicative" ruling is an advisory opinion. This Article III Court is not permitted to speculate by issuing advisory opinions. On the facts of this case, no indicative ruling is constitutionally permissible.

But, to be clear, if the Court wishes to exercise its discretion to indicate a tentative view on the Government's motion to dismiss, the Court should indicate it would deny the motion. The Government's unexplained motion is clearly contrary to the manifest interests of justice. The Government is asking the Court to defer to its unelaborated conclusion that overturning the jury's guilty verdict in this important case is appropriate. The Court would abdicate its obligations under Rule 48(a) to review the Government's decision if it simply accepts that unsupported assertion. Moreover, the overwhelming evidence underlying the jury's guilty verdict make any dismissal clearly contrary to the manifest public interest. At a time of intense national controversy over police use of force, particularly against racial minorities and disfavored communities, the Court should refuse to approve such an abrupt and unjustified outcome.

## I.      This Court Must Deny the Government's Motion to Dismiss Because it Lacks Jurisdiction to Consider the Motion.

The Government is obscuring the truth: This case has now moved to the Ninth Circuit. The Government's latest supplemental filing vaguely alludes to a "question about this Court's jurisdiction to grant the motion to dismiss." ECF No. 126 at 1. No question exists. Obviously, this Court lacks jurisdiction because the Defendant has filed a notice of appeal and taken the case to the Ninth Circuit.

The pertinent facts are not in dispute. More than eight weeks ago, on June 6, 2025, the Defendant appealed his criminal conviction for violating J.H.'s rights to the Ninth Circuit. ECF No. 112.  The Ninth Circuit has is currently handling the appeal under Ninth Circuit Case No. 25-3607.

"The general rule is that once a notice of appeal has been filed **the district court is divested of jurisdiction over the matters being appealed.**" *United States v. Phelps,* 283 F.3d 1176, 1181 (9th Cir. 2002) (*citing Griggs v. Provident Consumer Disc. Co.,* 459 U.S. 56, 58 (1982)). The straightforward reason for this rule is to "avoid the confusion of having the same issues before two court simultaneously." *Id.* "The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Peck v. Cnty. of Orange,* 528 F. Supp. 3d 1100, 1103 (C.D. Cal. 2021) (internal citation omitted).

The Government makes no claim that any exception to the general rule applies here.

This Court lacks jurisdiction to consider the Government's motion. It therefore must deny it.

.

## II.    The Government Has Failed to Make a Timely Motion for an "Indicative" Ruling.

While failing to forthrightly disclose this Court's lack of jurisdiction, the Government now sheepishly asks this Court for what it calls an "indicative" ruling. Specifically, the Government asks this Court to rule, hypothetically, that, were the Ninth Circuit to remand, then this Court would grant the motion to dismiss. ECF No. 126 at 1. The Government cites Fed. R. Crim. P. 37(a), a rarely used rule providing for certain dispositions after a "timely" motion:

> (a) Relief Pending Appeal. If a **timely** motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may:
> (1) defer considering the motion;
> (2) deny the motion; or
> (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue.

Fed. R. Crim. P. 37(a) (emphasis added).

The Government does not explain why its motion is "timely." And the Government filed its motion more than seven weeks after the Court entered its judgment and commitment order. ECF No. 110. The Government offers no explanation for why it waited weeks to move to dismiss. Now, nearly two months later, the Government's motion falls well outside this Court's inherent authority to reconsider an order. *See United States v. Foumai*, 910 F.2d 617, 620-21 (9th Cir. 1990) (reconsideration allowed with 30 days). This Court should deny the Government's request for an "indicative" ruling as untimely.

## III.    The Court Should Decline the Government's Request to Provide an Impermissible Advisory Opinion.

Even if the Government's request for an "indicative" ruling were timely, the Court should not provide such speculation. On the facts of this case, an "indicative" ruling is nothing other than an advisory opinion. Specifically, the Government invites this Court to hypothesize about what it would do in the (uncertain) event that the Ninth Circuit were to remand this case back to it.

"The rule against advisory opinions is 'the oldest and most consistent thread in the federal law of justiciability,' reflecting the same core considerations that underlie the justiciability doctrine more generally." *Ctr. for Biological Diversity v. United States Forest Serv.*, 925 F.3d 1041, 1047 (9th Cir. 2019) (quoting *Flast v. Cohen*, 392 U.S. 83, 96 (1968)). In order not to violate this rule and present a justiciable dispute, a case must satisfy two requirements. First, the case must present "an honest and actual antagonistic assertion of rights by one [party] against another." *Id.* (quoting *U.S. Nat'l Bank v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 446 (1993)). Second, the Court "must be empowered to issue a decision that serves as more than an advisement or recommendation." *Id.* at 1048.

Here, of course, the Government admits that there is no dispute between it and Defendant, failing the first prong. And, in addition, the Government is asking

this Court to advise how it might rule—at this time, on this record—about a hypothetical remand from the Court of Appeal—which will occur at a different time, perhaps on a different record.

The Government cites Rule 37(a) of the Federal Rules of Criminal Procedure as authority for such an "indicative" ruling. But as the Advisory Committee notes to that rule explain that, in criminal cases, the rule is to be used "primarily if not exclusively for newly discovered evidence motions, reduced sentence motions, and motions under 18 U.SC § 3582(c) [compassionate release from prison]." Fed. R. Crim. P. 37(a), Adv. Comm. Note, 2012 Adoption (internal citations omitted). Those three situations involve new factual developments in a case, warranting revisiting an earlier proceeding. But in this case, the Government does not cite any new factual development. It only offers its change of *opinion* about how to best proceed. *See* ECF No. 126 at 3 (noting that the Government "has elected to not defend the conviction on appeal").

Moreover, the Advisory Committee Notes to Rule 37(a) explain that "a motion for an indicative ruling may present complex issues that require extensive litigation and that may either be mooted or be presented in a different context by decision on the issues of the issues raised on appeal." Fed. R. Crim. P. 37(a), Adv. Comm. Note, 2012 Adoption. In this case, Defendant has challenged his conviction before the Ninth Circuit. The Government has announced that it will decline to defend the conviction on appeal. But simply because the Government is taking a dive does not mean the Defendant has landed a knockout blow. Someone else may step into the ring.

Where the Government does not defend the judgement below, the Ninth Circuit's normal practice appears to be to rely on its "inherent authority to appoint a special counsel to represent a position abandoned by the United States on appeal." *See, e.g., United States v. Arpaio*, 887 F.3d 979, 982 (9th Cir. 2018).

In *Arpaio*, the facts were similar to those here. In 2016, the Government prosecuted a former Maricopa County Sheriff, Joseph Arpaio, obtaining a conviction. Thereafter, President Trump was elected, and he pardoned Sheriff Arpaio. Arpaio then moved the district court, first, to dismiss the matter with prejudice, and, second, to vacate the guilty verdict. *Id.* at 980. The district court granted the first request for dismissal but denied the vacatur. *Id.* at 981. The district court explained that the pardon power "is an executive prerogative of mercy, not of judicial record-keeping." *United States v. Arpaio*, No. CR16-01012-001-PHX-SRB, 2017 WL 4839072, at *2 (D. Ariz. Oct. 19, 2017).

Arpaio appealed, and the Government indicated it would not defend the district court's order denying vacatur. *Id.*

In light of this development, the Ninth Circuit observed that the Court would be forced to decide the appeal without "the benefit of full briefing and argument unless we appoint a special prosecutor to defend the decision of the district court." *Id.* To receive the benefit of full briefing, the Circuit appointed a special prosecutor to defend the district court's order, noting that when "the government confesses error in the Supreme Court, and thus abandons a position taken in a lower court, the Court commonly appoints an amicus to assert the abandoned cause." *Id.* at 982 (internal citation omitted). *See, e.g., Glossip v. Oklahoma*, 145 S. Ct. 612, 624 (2025); *Dickerson v. United States*, 530 U.S. 428, 442 (2000) ("Because no party to the underlying litigation argued in favor of § 3501's constitutionality in this Court, we invited Professor Paul Cassell to assist our deliberations [on the criminal case] by arguing in support of the judgment below.").

Eventually, the Ninth Circuit rejected Arpaio's (uncontested) appeal, agreeing with the appointed special prosecutor that there was a difference between dismissal of charges and a vacatur of a guilty verdict—and no vacatur was required. *See United States v. Arpaio*, 951 F.3d 1001 (9th Cir. 2020).

///

**J.H.'s SUPPLEMENTAL OBJECTION TO GOVERNMENT MOTION TO DISMISS**

In light of *Arpaio*, in handling Defendant's appeal here, the Ninth Circuit seems likely to appoint an amicus to argue in support of the Defendant's conviction. And then, after considering the fully briefed arguments, the Ninth Circuit will rule on the merits of Defendant's appeal. Such a ruling—one way or the other—certainly has the potential to alter how this Court might assess the Government's motion to dismiss. Notably, as in *Arpaio*, the Government's pending motion to dismiss seeks not only dismissal of the indictment against Defendant but also vacating the judgment. ECF No.121 at 1. Accordingly, this Court should simply await a clarifying ruling from the Circuit on the Defendant's appeal before speculating on how issues on remand might shake out.

### IV. In any Event, an Indicative Ruling from this Court Should Indicate that It Would Deny the Motion to Dismiss.

If the Court is nonetheless inclined to offer an advisory opinion on what it might do in the possible event of a remand from the Ninth Circuit, this Court should opine that it would reject the Government's motion to dismiss—for both legal and factual reasons. On the law, the Government has offered no explanation for its late-in-the-case dismissal, other than its own change of mind. *See* ECF No. 126 at 2-3. Accordingly, because the Government has provided no explanation for the dismissal motion, this Court cannot discharge its obligation to assess whether the dismissal motion is merited. On the facts, the overwhelming evidence shows that Defendant is guilty of a serious civil rights violation—and thus there is no reason to overturn the jury's verdict.

### A. The Government's Dismissal Motion Should Be Denied on the Law.

As this Court previously explained in ruling on the Government's earlier Rule 48(a) motion to dismiss, courts may "deny uncontested Rule 48(a) motions 'if the motion is prompted by considerations clearly contrary to the public interest.'" ECF No. 103 at 2 (quoting *United States v. Rinaldi*, 434 U.S. 2, 28 n.15 (1977)); *see also* Thomas Ward Frampton, *Why Do Rule 48(a) Dismissals Require "Leave of Court?"*, 73 STAN L. REV. ONLINE 28, 32–37 (2020) (analyzing Rule 48(a)'s

history and concluding that "the 'principal object' of Rule 48(a)'s 'leave of court' requirement was … to guard against dubious dismissals of criminal cases that would benefit powerful and well-connected defendants").

When a district court reviews a Rule 48(a) dismissal motion, the Government must set forth its basis for moving for dismissal. This allows a district court to evaluate whether to grant leave to dismiss. As Judge Weinfeld has explained, Rule 48(a) "contemplates public exposure of the reasons for the abandonment of an indictment, information or complaint in order to prevent abuse of the uncontrolled power of dismissal previously enjoyed by prosecutors. Accordingly, to gain the Court's favorable discretion, it should be satisfied that the reasons advanced for the proposed dismissal are substantial and the real grounds upon which the application is based." *United States v. Greater Blouse, Skirt & Neckwear Contractors Ass'n*, 228 F. Supp. 483, 486 (S.D.N.Y. 1964)).

The purpose for requiring the Government to state its actual reasons for seeking dismissal is apparent from Rule 48(a)'s text: "Since the court must exercise sound judicial discretion in considering a request for dismissal, it must have sufficient factual information supporting the recommendation." 3B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 802 (4th ed. June 2024 update)). Indeed, a district court would abuse its discretion if it did not articulate its reasons for granting or denying leave, as it cannot discharge its duties properly unless the underlying motion accurately states the government's reasons for dismissal. *See United States v. Derr*, 726 F.2d 617, 619 (10th Cir. 1984) ("If the record contains no reasons or facts explaining the trial court's decision, the trial court's decision is effectively unreviewable.").

Because a court must evaluate the true reasons for a dismissal, courts have looked beyond the four corners of the motion to consider the entire record before the court—sometimes even conducting hearings to determine if dismissal is warranted. *See, e.g.*, *Rinaldi*, 434 U.S. at 30 (finding no bad faith on the part of the

government only after conducting an "examination of the record"); *see also United States v. HSBC*, 863 F.3d 125, 141 (2d Cir. 2017) (noting that a monitor's report could "indeed be relevant in determining whether to grant an eventual Rule 48(a) motion"). Of course, in this case, this Court previously developed a record as to why the Government was dismissing the felony level charge but maintaining the misdemeanor. *See* ECF No. 103 at 3 (noting that "[t]he Court explicitly asked the Government what prompted its Rule 48(a) motion in the Court's May 19, 2025 hearing").

Now in this case, the Government appears to be pursuing a strategy it has recently pursued elsewhere—specifically, a strategy of not allowing district courts to make a reasoned evaluation of the underlying reasons for a motion to dismiss. *See, e.g.,* Victims' Consolidated Sur-Reply, ECF No. 340 at 2-9, *United States v. Boeing*, No. 4:21-cr-0005 (N.D. Tex. July 18, 2025) (explaining how the Government entered into a binding non-prosecution agreement even before the district court had ruled on a dismissal motion). Here, by presenting an undeveloped record, the Government is staking out new ground—e.g., that it can simply inform a trial court of its decision to dismiss, and that decision standing alone is enough to justify dismissal. In light of this ploy, the Government's (unelaborated) reasons for abruptly dismissing this case are "clearly contrary to the manifest public interest." ECF No. 103 at 5 (quoting *United States v. Weber*, 721 F.2d 266, 268 (9th Cir. 1983)). Specifically, the Government's reasons are contrary to Rule 48(a), which adopted a judicial review requirement for motions to dismiss to prevent dismissals "savor[ing] altogether too much of some variety of prestige and influence (family, friends, or money) that too often enables their possessors to violate the laws with impunity." *United States v. Woody*, 2 F.2d 262, 262 (D. Mont. 1924), overturned in Rule 48(a), as recognized in Adv. Comm. Note (1944 Adoption). By blocking meaningful judicial review, the Government is acting contrary to the Rule 48(a) judicial review provision—and thus acting contrary to the public interest.

**J.H.'s SUPPLEMENTAL OBJECTION TO GOVERNMENT MOTION TO DISMISS**

In its earlier ruling on the Government's earlier dismissal motion, this Court briefly mentioned out-of-Circuit authority questioning whether district courts really possess authority to deny motions to dismiss. *See* ECF No. 103 at 5 (citing *In re United States*, 345 F.3d 450, 453 (7th Cir. 2003) (Posner, J.)). The Seventh Circuit's case is not controlling here. And in any event, with respect, the Seventh Circuit's skepticism about district court power is unpersuasive.

First, the Circuit appears to admit that its interpretation of Rule 48(a) renders the provision essentially meaningless. If a rule providing for judicial review of a motion cannot be judicially enforced, then the rule has no purpose. This outcome is contrary to the well-settled principle that a legal rule should not be interpreted in a ways that make the rule ineffective. *See, e.g.,* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 63 (2012) ("A textually permissible interpretation that furthers rather than obstructs the document's purpose should be favored.").  As one court put it, "[r]ecommendations by the prosecutor that charges be dismissed are not conclusive upon the court, otherwise there would be no purpose to Rule 48(a), which requires leave of court for the dismissal of an indictment." *United States. v. Abreu,* 747 F. Supp. 493, 502 (N.D. Ind. 1990), aff'd sub nom. *United States. v. Vasquez,* 966 F.2d 254 (7th Cir. 1992).

The Seventh Circuit also was a bit coy about whether it was holding that Rule 48(a) was an unconstitutional interference with executive branch prerogatives or simply was a rule that cannot be judicially enforced. The later interpretation is suggested by the Seventh Circuit's language that Rule 48(a) is not one of the "judicially enforceable limits on the powers of the nonjudicial branches of the government." 345 F.3d at 453. But that seems to be a curious interpretation of Rule 48(a), which specifically imposes a leave-of-court requirement. Obviously, such a requirement is, on its face, a judicial limitation on executive branch power. To seek "leave of court" means to seek court *permission*. *See* BLACK'S LAW DICTIONARY

1027 (Deluxe 10th ed. 2014) (defining "leave" as "permission <by leave of court>"). So the Seventh Circuit's position appears to ultimately devolve to the view that Rule 48(a) unconstitutionally limits executive branch power.

But if the Seventh Circuit's (unstated) view was that the rule is unconstitutional, that extreme position runs into serious problems. For starters, this view is inconsistent with Supreme Court precedent. As this Court has recognized, in *Rinaldi*, the Supreme Court clearly believed Rule 48(a) was constitutional and "vest[ed] some discretion in the court" to deny leave to dismiss. *See Rinaldi*, 434 U.S. at 29 n.15.

Under contemporary jurisprudence, decisions surrounding prosecuting a criminal case have often been described as a "a core executive function." *United States v. Armstrong*, 517 U.S. 456, 465 (1996). But even so, that does not mean that a judicial role is entirely absent. It would seem that the judiciary should have inherent authority to protect the work of an "arm of the court"—i.e., a jury that has considered the evidence and arguments from both sides and then returned a guilty verdict. This conclusion about judicial power does not interfere with the prosecutor's ability to determine initially which cases to pursue and which cases to decline. But having chosen to involve the judiciary by seeking, obtaining, and presenting to the court a grand jury indictment—and then presenting the case to a jury and obtaining a guilty verdict—the prosecutor then places any subsequent dismissal decisions under judicial review. *See Ryan*, 88 F.4th at 625-29.

Here, the Government makes no claim that Rule 48(a)'s judicial review provision is unconstitutional. Nor is there any need for the Court to consider whether to appoint a special prosecutor to obtain a conviction. The Government itself has already obtained a conviction. Thus, the only thing that the Court needs to do, as a matter of law, is to conclude that <u>the Government's failure to justify its motion to dismiss is alone a sufficient basis for denying the motion.</u>

///

**J.H.'s SUPPLEMENTAL OBJECTION TO GOVERNMENT MOTION TO DISMISS**

**B. The Government's Dismissal Motion Should Be Denied on the Facts.**

Even if the Court were inclined to turn to the underlying facts of this case, denial of the motion to dismiss is required. If there were ever a case where it would be clearly contrary to the manifest public interest to dismiss a *conviction*, this is the case. The jury heard all the evidence, from both sides. It returned a carefully considered guilty verdict that a police officer had betrayed his trust and used excessive force. Defendant has no persuasive grounds to overturn that conviction on appeal.[2]

Moreover, the facts of this case cry out for justice. J.H. is a senior citizen. She committed no crime. She had no weapon. She did not try to flee. She did not try to resist.  But, because of Defendant's excessive force—while acting under color of law as an employee of the Los Angeles County Sheriff's Department—she sustained a black eye, a fractured bone in her right arm, multiple bruises, scratches, and significant chemical burning from the pepper-spray. Defendant sprayed her at close range, as she screamed in pain and struggled to fill her lungs with oxygen. And afterward, rather than admitting his crime, Defendant tried to cover up his actions by initiating bogus charges against J.H. for felony obstructing an officer.

But the Court need not take the victims' word that Defendant is guilty. Defendant was previously willing to enter a guilty plea in this case. And, after a trial, the jury found him guilty. And recently at sentencing, the Government argued that Defendant was guilty, while proposing a sentence of three-months home confinement. ECF No. 104 at 1-2. The Court, of course, rejected that sentence as too lenient, imposing instead a sentence of four months imprisonment.

The Supreme Court has recognized that crime victims have a powerful and legitimate interest in punishing the guilty. *See Calderon v. Thompson*, 523 U.S. 538, 556 (1998).  To unsettle these expectations here by dismissing a well-founded

---

[2] This Court recently denied Defendant bond pending appeal. J.H. is confident the Ninth Circuit will affirm the jury's verdict. If the Court has any hesitancy about the likely outcome on appeal, it could simply wait to see what the Ninth Circuit does.

**J.H.'s SUPPLEMENTAL OBJECTION TO GOVERNMENT MOTION TO DISMISS**

civil rights conviction will inflict a profound injury to the victim's powerful and legitimate interest in punishing the guilty.

Obviously, the Government disagrees with the Court's prison sentence. But sentencing is "an exclusively judicial function." *United States v. Tirado*, No. 21-50247, 2023 WL 119584, at *2 (9th Cir. Jan. 6, 2023) (citing *United States v. Stephens*, 424 F.3d 876, 881 (9th Cir. 2005)). The Government is now attempting to deploy a motion to dismiss to effectively overturn this Court's prison sentence. This intrusion into the sentencing domain is improper. *See United States v. Freedberg*, 724 F. Supp. 851, 854 (D. Utah 1989) (denying Rule 48(a) motion to dismiss where it was "apparent that … to dismiss all charges … seriously infringes upon the court's discretion in sentencing and indeed removes all sentencing options from the court"). And if the Government's unprecedented maneuver works here, it will no doubt serve as a roadmap for other cases.

It is no secret that many Americans distrust law enforcement, particularly in racially charged settings. Those skeptical of law enforcement believe that officers can use force—even excessive force—without any meaningful checks. Summarily overturning the jury's verdict that Defendant used excessive force here will only feed those suspicions.

The truth in this case is that Defendant used excessive force against J.H. The Court should reject the Government's effort to rewrite history—and sweep this disturbing crime under the rug.

## CONCLUSION.

Defendant Kirk is guilty of violating J.H.'s civil rights. A jury has so found. This Court should not overturn the jury's considered verdict.

For the foregoing reasons, the Court should reject the Government's pending motion to dismiss (ECF No. 121) because it lacks jurisdiction over the motion. The Court should also decline to offer an "indicative" ruling of how it might proceed in the future on remand from the Ninth Circuit. If the Court is inclined to reach the

**J.H.'s SUPPLEMENTAL OBJECTION TO GOVERNMENT MOTION TO DISMISS**

merits of the Government's motion to dismiss, the Court should deny it on both legal and factual grounds.

The undersigned team is ready, willing and able to step in and defend the appeal at the Ninth Circuit as amici curiae counsel.

DATED: 8/3/25                     LAW OFFICES OF CAREE HARPER

                                  /s/ Caree Harper
                                  Caree Harper
                                  Paul G. Cassell (Utah Bar 6078*)
                                  S.J. Quinney College of Law
                                  University of Utah

                                  Attorneys for Crime Victim "JH"

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

I am a citizen of the United States and a resident of Los Angeles County, California. I am over 18 years of age, and I am not a party
to the above-entitled action. My business address is 401 Wilshire Blvd., Suite 1200, Santa Moncia, California.

   On this date, **August 3, 2025**, I served a copy of the foregoing

**CRIME VICTIM'S *SUPPLEMENTAL* OBJECTION TO THE GOVERNMENT'S MOTION TO DISMISS & NOTICE OF AVAILABILITY TO DEFEND THE CONVICTION AS *AMICI CURIAE* AT NINTH CIRCUIT**

via the Court's CM/ECF filing system.

   This declaration is executed on this day, **August 3, 2025**, in Los Angeles County, California.

DATED: 8/3/25                              LAW OFFICES OF CAREE HARPER

                                           /s/ Caree Harper
                                           Caree Harper